The first case today is number 241524, United States v. Ray David Fulcar. At this time would counsel for the appellate please come to the podium and introduce yourself on the record to begin. Good morning, your honors. Inga Parsons, CJA counsel for Mr. Ray David Fulcar. May it please the court, counsel. With the court's permission and if they'd like a different agenda, oh before I start I will reserve five minutes if I may. Thank you. You have three minutes. Three minutes? Okay. With the court's permission and if unless they want another agenda what I would like to do is focus on two arguments, rely on my brief for the other. I do know that the Maldonado case that's coming up behind me has a very, behind my case has a very similar issue but I will focus on what I think is really important for my client. The first issue I want to deal with is the suppression issue in the waiver. This is an interesting case because my client fought against the search of his home and there was a search warrant and oftentimes that's the end of the discussion. But not here and the reason for that is because there was no nexus between the drugs that were found on my client when he was arrested. When you get to the merits of it you want to just address the waiver problem? Very well. I kind of debated what to go with first. So my client did not make a knowing and intentional waiver of a known right. And I understand and I can't fight what's in Rule 11 but that's not all that happens in a plea that occurs before a judge because the essential point is to make sure that it's a voluntary and knowing waiver of a right. There was a very extensive motion to suppress in this case. Obviously my client was ruled against but my client pled guilty what I would say straight up. There was no plea agreement. There was no extra, you know, we'll dismiss a couple of counts. He should have been advised that by pleading guilty without a conditional plea under Rule 11 that he would be giving up the right to appeal. Counsel what case of ours requires the district court to have done that? I have not found that but I do know from experience. I was a federal public defender in the Southern District of New York. I've been practicing for 35 years. Judges ask a lot of questions that are very important that are not listed in Rule 11. And it may be a cultural issue but the whole point of those questions is to ensure that when you give up such an important right that you do so knowing what the consequences are going to be and including in that is the notion of giving up the ability to challenge the government's evidence. And there is case law that talks about that. And the interesting thing about the cases that I cite is that even without Rule 11 to dictate that it has to be, that you have to be advised of that. On this view, what's the difference between a C plea and a regular straight plea? In this case, I don't... If your view prevailed. If my view prevailed? What would be the difference between just the... I mean effectively you're making it into a C plea, aren't you? No, Your Honor. I don't believe it has an impact on what you have to ask a client or a defendant with respect to what rights they're giving up. One of those rights is the right to appeal a... Isn't that the point of a C plea? No, Your Honor. A C plea is to give your client the opportunity to have the judge be confined to what they can impose. And if the judge decides not to go within the C plea, then you get your plea back. This is... I see it as a very separate issue because what we're trying to ensure is that a defendant is well aware of what he's able or not able to do. And understandably, a conditional plea has to be agreed upon. So the question may be, well, what happens if the government says, no, you can't do a conditional plea? That happens quite a bit, actually, more frequently in the Southern District of New York because they are not as, I don't know, reasonable in some ways as the District of Massachusetts. And what you end up doing in a case like this, which could have happened in this case, is that you weigh the jury and you do the trial on the facts to the judge and the judge makes a decision with respect to the guilt. Counsel, aren't we, though, on plain error review for this issue? So just to return back to, is there any case, given the plain error standard, that would require us to rule in your favor here? You know, I think in some respects that it's somewhat of a unique situation because typically judges do state that you are giving up your right to challenge the evidence or you are advising your client, do you understand that if you don't get a conditional plea that either you have to do, basically, a semi-trial or you can't appeal? So I did not find a case to that extent, but I do think it's partly because of the unique nature of this case because you had a defendant who pleads guilty after a very extensive motion to suppress and then you look at the record and the judge did not go into those issues, which is how the courts have looked at the voluntariness. It comes up, these issues often come up when there's a waiver and a plea agreement and the question is whether or not the client fully understood that they were waiving their rights to appeal, the other rights that came up. So I think it's likened to that in the sense that you have a, you have a very strong fundamental and important right, but there is an obligation to ensure that it's intentionally given up and at least they understand what's going on. Go back to when you enter a straight plea and plead guilty, aren't you giving up your right to appeal to a certain extent? If you're pleading straight up, no, you don't give up your right to appeal. What are you going to appeal? Well, it depends. There may be an issue as to the voluntariness of your plea, which is essentially what this argument is. And then why would we think that a person would, that the sort of status quo ante would be that someone was thinking they could plead guilty and still challenge a prior suppression ruling? I believe so. I believe, and my client certainly thought that, I will tell you that. But the point is, is that... On this record, it might be a different case if there was some indication of confusion or something like that. But all we have is the absence of a statement from the district court about the appeal rights. There's no indication of the confusion of the, unless there's something in the record I'm missing. It's an omission as opposed to a confusion. Right. And the typical cases in which we deal with not knowing involuntary, there's some indication of confusion. You know, you don't know what you don't know. That's part of the problem. And maybe it all does come down to... By an error, whose problem is it? That's the issue. Well, you know, giving up your right to having a conditional plea, giving up your right, or being told that that's part of it, I think, is a fundamental right. And maybe it does come down to ineffective assistance of counsel. And if this record is not clear enough, the court decides not to go forward, is to either immediately remand it for a hearing on the issue. On the sentencing question, there's a argument from the government that our decision in Abdulaziz doesn't survive the Supreme Court's decision in Brown. Do you want to just address that? Yes. Because if you make it, you need Abdulaziz to remain in law for you to win. Yes. Abdulaziz and also Krakow are very constructive. But on the timing point about Abdulaziz, Brown obviously hadn't been decided at the time of Abdulaziz. Correct. And so the government says after Brown, Abdulaziz can't survive. What's your answer to that? My answer to that is that Brown itself, the Supreme Court in Brown itself, distinguished cases involving the un-career offender and guideline cases. And that was also made very clear in the Fifth Circuit in the minor case that post-dated Brown, which made the same findings that were done in Abdulaziz and also affirmed the notion that ACCA is different. And the reason why it's different is because of the language that's in ACCA. It's not a held to the use of the guidelines at the time of sentencing. And what I find interesting about that is that the government, you know, says, well, we have a majority of circuits. But if you look at who those circuits are, you're looking at the Second Circuit, you're looking at the Ninth Circuit, and minor is the Fifth Circuit. And the previous Fifth Circuit case, no friend to defendants. Let's say, I know it does say that in Brown, therefore it doesn't have to address those cases in Brown. But if you take that footnote from Brown which says we have to look at the guidelines in effect at the time, so then we look at the guideline in effect at the time. But the guideline in effect at the time is just going to refer you to the drug schedule, the controlled substance. And the question is, is that saying look at the drug schedule in effect at the time? And that's not in the Sentencing Reform Act. But I think that is the better reading and better reasoning of why we do. I guess the question is, after Brown, does the logic of Abdul's disease on that point hold up, given how Brown thinks about the relationship between the drug schedules and the purpose of the enhancement? In other words, obviously we have to look at the guideline at the time, but that guideline here just has this phrase, controlled substance, which then refers to the drug schedule. So I take it the government's argument is, okay, so you apply the guideline at the time. But the logic from Brown is that the right approach to the drug schedule is the drug schedule at the time of the offense, not at the time of sentencing. Right. But I think that's based on the ACCA, the ACCA language that directs it there. And you don't have that when you have a 2K2.1 case or you have a 4B1.1 under the career offender guidelines. You also have to be thinking about the purposes of the guidelines and the fact of the uniformity. And I think that's really set out very clearly in Krakow and also set out in Abdul's disease, that what we are looking at is not a backwards-looking view, but basically a view that says, you know, federal law should be the determination with respect to whether it's under the CSA, whether or not it can count as an offense. Otherwise, you lose that uniformity. And I think one of the statements that was in Krakow that was interesting is that, you know, you're looking at state law, which could be based on a dictionary, and you don't know even which dictionary that you're going to use. The purposes of the guidelines when they went in effect, were passed in 84, went in effect in 87, was this notion of federal uniformity. I understand the federal point. I'm just stuck on the timing point. I thought some of the things that you were interested in, in ACCA, is the mindset of the offender at the time of the offense, not at the time of sentencing. Right. What is it in ACCA that's different than guidelines on that score with respect to the drug schedules? Well, I think what you were looking at is ACCA is not dealing with the notion of what is the offense at the time, whether it's a crime at the point of the guidelines, because it's a guidelines enhancement. It's not a statutory enhancement, and I think that really does make a difference. And there's no reason why the Krakow reasoning or the Abdulaziz reasoning is affected by that. And in fact, when I read Brown, and of course I'm a defense attorney, it did seem like the court was deliberately making that distinction in order to preserve the notion that you want to treat offenders similarly in the federal system. And it's not as if the guidelines do not count other sentences. I mean, by timing, there can be a difference. Some offender who's had an offense that occurred one day before the other, because of the timing restrictions, that offense does not count toward the guidelines or to the career offender. That is very much anticipated by the guidelines for any of those offenders. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record. Good morning. May it please the court. Alexia DiVincentis for the United States. I'll pick up where defense counsel left off with the career offender issue, unless the court has a different preference. And in doing so, I want to make clear that there are two separate mechanisms by which this court can affirm the career offender enhancement in this case. One is to hold that, consistent with the government's position, the definition of controlled substances offenses captures substances that are controlled only by the state. And the second would be to revisit Abdulaziz and hold that the time of the prior offense controls. If the court agrees with us on the first issue, it needn't reach the second. I will preserve my argument on the first issue, though, for the next case where I suspect we'll have at it. To address specifically Brown and Abdulaziz, this court should revisit Abdulaziz because Brown rejects its core reasoning. Abdulaziz reasoned that an enhancement for a defendant's past criminal conduct is based on a judgment about how the law currently views the seriousness of the defendant's... You say it says an enhancement, but did Brown say an enhancement, that's the purpose of an enhancement, or did it say that was the purpose of the ACCA enhancement? For purposes of the ACCA enhancement, but nonetheless the same... I guess that's the question is whether that is just a holding about the aims and purposes of ACCA. And then that footnote saying, well, the sentencing guidelines say focus on the guideline at the time of sentencing. And in general, we've understood sentencing to be, under the guidelines, focused on what we think of your culpability at the time of sentencing for your conduct. So how do we draw from Brown's account of the purposes of ACCA, a conclusion that that extends to the sentencing guidelines context? So a few points in response. The court in that footnote was merely noting that Brown couldn't invoke the time of sentencing rationale from the guideline in support of his ACCA argument because ACCA doesn't contain that similar command. But what the court didn't do is go on and decide... Why would that point of distinction be of any relevance unless they thought that command might indicate something different about the purpose of the guidelines? Well, I think importantly what the court didn't go on and do is say what that command means for purposes of interpreting the guideline. And I think as Your Honor's question is recognized, and in fact this court recognized in Abdulaziz, simply saying that you're applying the current version of the guidelines doesn't answer the question. The question is then, well, what does the current version of the guidelines tell us to do? Are we conducting a present tense inquiry or a backwards looking one? Is there something in Brown that tells us what we're doing when we're applying the guidelines? We believe that the court's interpretation of the text applies equally here. When we are in the context of the career offender guideline, the guideline refers to prior convictions subsequent to sustaining. The guideline also tells us which convictions no longer count, specifically convictions I believe that have been expunged. The negative implication of which is the other remaining convictions do count. And to our view, there is no meaningful distinction between previous convictions in ACCA and prior convictions here. In both cases, what you are doing is conducting a backwards looking inquiry. And in both cases, that backwards looking inquiry is consistent with the purpose of recidivist enhancements. But wouldn't we need something more specific? If the general background rule for sentencing is you do it at the time, wouldn't we have needed something more specific for this particular guideline to adopt your interpretation? We don't. The whole point is we're trying to interpret based on the text, either what Congress wanted or the Commission intended. So in our view, the text here is clear. By referring to prior convictions, that is directing a backwards looking inquiry. Yes, Brown and McNeil both concerned ACCA, but there's no distinction between previous and prior that we have here. So in both instances, what the logic of those cases is telling us is that we are conducting a backwards looking inquiry here. And again, that's consistent with the purpose of recidivist enhancements. And I think it's interesting to note that in fact, Congress's directive to the Commission in 994H to implement a career offender guideline came from the very same Comprehensive Crime Control Act of 1984 in which Congress implemented ACCA. And it's somewhat strange to think that the same Congress simultaneously was holding different views about how we think about recidivism. Clearly, though, if you have two people, one commits an offense, a controlled substance offense, involving a substance that everyone both then and now says is prohibited, controlled, causes problems, and someone else who does one with a substance who subsequently Congress says, oops, it really isn't a crime to do that. Those seem to be two different people. Respectfully, I think that's precisely the logic that Brown rejects. Brown confirms that what matters for purposes, at least in the ACCA, of a sentencing recidivist provision is the fact of the prior drug conviction, not the legislature's subsequent scheduling judgment. And this is because the conviction itself demonstrates the defendant's culpability and dangerousness by revealing that the defendant previously engaged in illegal conduct that created a risk of violence either through interactions with law enforcement or There is a tension because given the categorical approach, which Brown at certain points seems not implicitly to be a big fan of, the idea is not just did you commit some prior offense, it's did you commit a prior offense of a certain kind, which is a controlled substance offense. And to Judge Keada's point, from the perspective at the time of sentencing, there is no indication that the offense that was committed is in the eyes of any lawmaker at the time of sentencing a controlled substance offense. And the career offender guideline is designed to be specially concerned by people who committed that type of offense, not just any offense. Well, again, I think Brown shows us that the seriousness of a drug trafficking offense doesn't just disappear because the substance has been descheduled. The seriousness of that offense isn't linked to the identity of the substance. It also comes from the fact that the substance is controlled, which means that the defendant has shown a willingness to engage in this activity that the Supreme Court in Brown recognized carries with it an inherent risk of violence. What if the commission did away with this enhancement? So the sentencing guideline, they said, we're no longer going to have this enhancement in cases involving marijuana. Wouldn't we apply that enhancement as it existed at the time of sentencing? We would, yes, Judge Keada. So why should it be different if you end up having the same practical outcome just through the referenced statute changing rather than the guideline changing? In the case of an amendment to the guideline that specifically then linked it to marijuana as opposed to a general controlled substances offense, I think there's a different implication there for what the commission has in mind. You're amending the actual text of the guidelines, whereas here the commission has just generally identified controlled substance offenses. Not to repeat myself, but I really think Brown on this particular point rejects the idea that there is no longer seriousness inherent in this offense simply because there's been a subsequent judgment to remove the substance from the controlled substances schedules. But isn't the difference that when the court was interpreting ACCA, there was no background rule that you applied? So we have a background rule for the guidelines, which is that you apply the guidelines as they exist at the time of sentencing. There wasn't that background rule when the court was interpreting the statute. So why isn't that an important difference? Because, again, like you said, we're trying to figure out what the commission wanted, but the commission's background rule is you apply what the guideline says at the time. Right. We certainly don't think that the background rule answers the question, and we also don't think that it informs the question here. The question is, by the text of the guideline, what the commission was suggesting the inquiry should be, and the plain text of the guideline points towards a backwards-looking inquiry, and that text is what governs here. I just wanted to say one thing about the law of the circuit doctrine because we've been talking about this as if we're now deciding how to do a disease, but unfortunately for you, we actually decided it. So the question is, is it so compelling what Brown said that when we have a commission that could easily address this issue and has been addressing things in this area, and we have a circuit split, why should we revise our rules on the sentencing guidelines rather than just stay where we are? If the Supreme Court disagrees, they disagree. If the commission wants to change it, they can change it. It's not like we end the circuit split by now reversing course, and so it's a complicated issue. The text isn't perfectly clear. Brown itself gave signals that maybe the sentencing world is different. The law of the circuit doctrine doesn't generally look favorably on panels on their own deciding to change course. Well, I would reiterate again that the court doesn't even need to reach this issue in the event that it would. Just on the last point, another way to think about it, one of the reasons for the law of the circuit doctrine is if a panel is going to reverse course, we do that on bonk. But then, of course, if you went on bonk, one of the questions on bonk would be what's the point of going on bonk? There's a circuit split anyway. You can go to the Supreme Court. The commission can resolve it. So it seems a little odd for a panel itself to make this decision. Well, again, the court doesn't even need to reach this question in the event that it agrees with the government on the definition of the controlled substance issue. But in the event that it does reach this issue, Abdulaziz, the core rationale of Abdulaziz has been rejected by Brown, and there may then be questions about what things look like in the guidelines world. But where the core reasoning, the sole reason really of Abdulaziz has been rejected, is that this court needs to visit the issue anew. Sure. Unless people have further questions on this. Yeah, you can go on to the state question. Sure. You probably didn't get the best panel for overruling Abdulaziz. Or questioning the dicta in Krakow. Oh, I'm happy to question the dicta in Krakow. You didn't get a great draw on that one either. Well, respectfully, with respect to Krakow, the question of which schedules mattered in Krakow, that question, the issue was unresolved. The case was decided on plain error. And critically, it was decided without the benefit of any briefing or even a single question or argument about the merits of that question. So to our mind, we can set Krakow aside and look at this issue fresh. And the defense briefing in both of the cases talks a lot about this idea that the government's view would just upend the categorical approach. But I think critically important to this issue is understanding what version of the categorical approach we are applying here. We are not in the world of Taylor, Esquivel, Quintana, where we're trying to define a federal uniform definition of this generic offense. Shura shows that we are in the world of the criterion-based approach. And in conducting that approach, our job here is to apply ordinary rules of statutory construction to determine what the guideline means. What about Jerome? Well, Seven Circuits have disagreed with the Second Circuit's view in Jerome, and we think for very good reason. Whether or not the Jerome presumption applies is a question of intent. And in discerning intent, we look at things like the context in which these words appear and the legislative history surrounding the provisions. Jerome itself shows this. Jerome looks to whether or not there's a clear indication in the legislative history and whether allowing state definitions to control would be consistent with the purpose of the statute that it was interpreting. And every single Supreme Court case that applies Jerome does the same thing. And in fact, the defendants in these cases haven't contested the defendants' understanding of Jerome. And the Second Circuit, we believe, has conducted this super-heightened, clear statement rule where they're only looking at these particular words without regards to any of the ordinary tools of statutory construction. And that is... Let me just ask you something very basic, and I think this is what Judge Gregory said in his concurrence, which is that there is a circuit split, a pretty deep circuit split. And as Judge Gregory said, it seems that the issue is at least debatable. And in the situation where it's at least debatable, then doesn't either the presumption or the rule of lenity apply in favor of the defense? Why not? I'm glad you want to mention the circuit split because I think, to get back to my original point, I think Schreuer actually explains a lot about the evolution of the split here. Because this federal-only approach really originated in Leal-Vega, which basically refused to look at the text of the guideline, just invoking the Taylor, quote-unquote, vision for a uniform federal definition. And then comes Gomez-Alvarez out of the Fifth Circuit, and they do the same thing. And then along comes Townsend, and with the Jerome presumption caveat, it effectively is adopting a similar sort of reasoning. Then comes Schreuer, and Schreuer tells us, we are not trying to define this uniform federal generic offense. We are just conducting an analysis of what the words of this guideline mean. And subsequent to Schreuer, every single court of appeals all sudden to consider this issue has come out in the government's favor. And for good reason. The commission clearly knows how to incorporate cross-references when it wants to. It does so at various places throughout the guidelines, including in this very same provision. I'm going to ask you one last question, but you're going to be able to talk about this further in the next case probably. If we were to adopt the state understanding rather than the federal understanding of a controlled substance, which I understand you say would resolve the case, which it would, in your favor, what would be the implications of that vote in the government's view for the timing issue? In other words, in Abdulaziz, the timing issue there didn't have this question of whether it be state or federal. I think it was assuming it was going to be federal. In fact, I think the government had waived the argument in Abdulaziz that it was state, and I think it made that point. And to me, I can see the logic of the timing issue supporting Abdulaziz more when we assume that they had a federal understanding in mind. Does the government have a view that if it was a state understanding, that would affect the timing? I realize it wouldn't matter for this case, but it will matter for other cases. Right. So we've assumed for the sake of these arguments that we're just applying the time of federal sentencing approach because it doesn't make a difference here. But to the extent that the question arose, I mean, the court doesn't need to decide it here, but we're deciding the question, and we believe that the time of prior conviction approach would be the appropriate approach for the same reasons that we think that Brown undermines Abdulaziz. I'm asking a different question. Does the government have a view of whether if we adopted a state understanding of controlled substance, that would have any bearing on the logic of the timing question? I think if you adopt a state understanding of the controlled substances issue, that even would sort of further undermine Abdulaziz in a sense, although we would reject the idea that the two questions aren't necessarily one and the same. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a three-minute rebuttal. Thank you. Just to sort of pick up again with the Brown case, and I think there is a roadmap for dealing with the differences between ACCA that were pointedly stated by the Supreme Court through the use of the minor case, because that's the Fifth Circuit case, and it goes through the differences, including the canons that compel a different approach and a different result than happened in Brown. I think that is an easy roadmap for this Court, and it is consistent with Abdulaziz, and it is consistent with the dicta in Krakow. And this panel does not need to, as you said, change the law in such a way, and there's no real reason for that as well, because it is consistent with lenity. It is consistent with the Jerome principle, which the government concedes is at least a presumption, and it's consistent with the analysis in Abdulaziz. The need for the uniformity, the need to be sentenced, to be given, and in my client's case, more than doubles his sentencing because of an offense that is no longer an offense under the federal system in some ways is the equities of that and just sort of the general notions of due process and fairness fully dictate the need to keep the Abdulaziz opinion. The reasoning of that opinion echoed by the Second Circuit, the Ninth Circuit, and in many ways, very forcefully in the Fifth Circuit, given the decision in Minor. If nothing else, any other further questions, I'll stand down. Okay.